[Civ. No. 47110. Second Dist., Div. Two. Dec. 19, 1975.]

ROBERT JAMES LANG, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
CAROLE AGNES LANG, Real Party in Interest.

COUNSEL

Sidney L. Radus for Petitioner.

No appearance for Respondent.

Donald S. Park for Real Party in Interest.

OPINION

BEACH, J.—This writ proceeding presents the question whether petitioner's obligation to pay spousal support to his former wife must be terminated pursuant to newly enacted section 4801.5 of the Civil Code.[1]

---

[1]Except where noted, all statutory references herein are to the Civil Code. Section 4801.5 was added to the Civil Code by Statutes 1974, chapter 1338, section 1, page 2911. It

Petitioner was required by the interlocutory judgment of dissolution to pay $350 per month spousal support to his former wife. On July 18, 1975, a hearing was held by respondent court on petitioner's motion to revoke the support order. At the conclusion of the hearing respondent court denied the motion "without prejudice." On or about August 1, 1975, petitioner filed a notice of appeal from the latter order. On September 15, 1975, he filed a petition in this court for a writ of mandate and/or prohibition challenging respondent court's order of July 18. We denied the writ petition without opinion. Thereafter the Supreme Court granted a hearing and retransferred the matter to this court with directions to issue an alternative writ of prohibition. The Supreme Court's order contained no statement of reasons for the issuance of the alternative writ.[2] However, recent authority holds that such an order from the Supreme Court must be construed as conclusive of all findings necessary to an alternative writ, which would include the propositions that petitioner's pending appeal is not an adequate remedy and that respondent court's denial of the motion "without prejudice" does not leave petitioner with a sufficient trial court remedy by renewal of the motion in that court. (*Atlantic Richfield Co.* v. *Superior Court,* 51 Cal.App.3d 168, 172 [124 Cal.Rptr. 63].) We therefore turn to the merits of the present matter.

The facts adduced at the July 18, 1975, hearing derived from the testimony of petitioner's former wife, Carole Agnes Lang, who is the real party in interest herein, one Murcel Sanford Mansell, and certain documentary evidence. It does not appear that respondent court disbelieved any of the testimony, but rather concluded that the facts proven by petitioner were insufficient to require the relief sought. Accordingly, we summarize the essential facts on the basis of the entire record of the hearing.

became effective January 1, 1975. The section provides: "Upon the petition of a spouse who has been ordered to pay support under Section 4801, the court shall revoke the order for support upon proof that the spouse to whom support has been ordered to be paid is living with a person of the opposite sex and holding himself or herself out as the spouse of the person for a total of 30 days or more, either consecutive or nonconsecutive, although not married to the person. The court shall order the restitution of any support which has been paid since the date upon which the spouse to whom support has been ordered to be paid commenced holding himself or herself out as the spouse of the person."

[2]The Supreme Court's order stated: "Petition for hearing granted. The matter is transferred to this court and retransferred to the Court of Appeal, Second District, Division Two, with directions to issue an alternative writ of prohibition to be heard before that court when the proceeding is ordered on calendar."

Sometime after the dissolution of her marriage to petitioner Robert Lang, Carole Agnes Lang (hereafter Carole) moved to Blythe, California, where she met Murcel Sanford Mansell. Mansell lived in a trailer in Space 20 of a mobile home park in Blythe. He had been totally disabled since about 1960 and derived his income of $651 per month from Oregon State Disability and Social Security. Carole lived in a trailer in Space 15 of the same mobile home park. Sometime in early 1975 Mansell and Carole pooled their money and purchased a new trailer in their true names, as "co-owners." They installed the trailer in Space 20; Mansell continued to reside in Space 20 in the new trailer. Also during the early part of 1975 Carole began living in the new trailer in Space 20. Although she did not live in Space 20 continuously through the date of the July 18, 1975, hearing, it is apparent that she did live there for more than 30 days. When living in Space 20 she would rent out her trailer in Space 15. On occasion while she was living in Space 20 Mansell would be in the hospital for treatment of various ailments.

On January 8, 1975, Carole personally appeared at the local office of the telephone company and applied for telephone service for Space 20. Prior to that date neither Space 20 nor Space 15 had telephone service. Mansell had been unable to obtain service in Space 20 because of an unpaid debt to the telephone company. Carole testified that she did not personally fill out the telephone service application form, but that a company employee did so with information supplied by Carole. The completed form listed "Carole Mansell" as the applicant. The form indicated that the telephone was to be listed in the directory under the name "Carole Mansell." In a space denominated "Name of Spouse," Carole told the telephone company employee to enter "Sanford," which was Mansell's middle name and the name he was often called. In a space labelled "Employed By/Nature of Bus." Carole caused the statement "Disability—husband" to be entered. She testified that by the term "husband" she was referring to Mansell. After the form was completed Carole signed it as "Carole C. Lang." She testified that she used the name Lang because she had previous credit with the telephone company under that name. After receiving the application, the telephone company verified that Carole did have good credit from a previous telephone listed under the name Carole Lang. Carole denied that she had intended to have the telephone listed in the directory under the name Carole Mansell, but she admitted doing nothing to correct that listing thereafter, even though she was aware of it and was receiving the monthly bills under the name Carole Mansell.

In April 1975, Mansell and Carole went to the local branch of Security-Pacific Bank and opened a joint checking account in the names "Murcel Mansell and Carole Mansell." Thereafter they each issued checks on that account with the foregoing names appearing on them. When Carole would issue the checks she would sign them as Carole Mansell. Carole explained that she and Mansell opened the joint account with the same last name because she had had difficulty cashing checks on a prior joint account where their names were listed as "Murcel Mansell and Carole Lang."

It does not appear from the record that any persons living at the mobile home park who were acquainted with Mansell and Carole believed they were formally married.

At the conclusion of the hearing respondent court denied without prejudice the motion to terminate spousal support, indicating in its minute order that the proof was insufficient. Petitioner contends that respondent court misinterpreted Civil Code section 4801.5 in arriving at its conclusion that the proof was insufficient. Prior case law is not helpful in interpreting this section; indeed, the present case is one of first impression.[3]

■ It appears clear, however, from the terms of section 4801.5 that a spouse seeking to terminate his or her obligation to pay spousal support must prove three facts, as follows: (1) that the spouse receiving the support is living with a person of the opposite sex; (2) that the receiving spouse is holding himself or herself out as the spouse of that person; and (3) that the latter facts existed for at least 30 days, though not necessarily consecutively. If these facts are proven, enforcement of a spousal support order must cease, effective the date upon which the receiving spouse first held himself or herself out as the spouse of the other person.

In the present case there is no question that if Carole lived with Mansell and held herself out as his wife, such facts existed for at least 30

[3]Section 4801.5 was enacted in 1974 and became effective January 1, 1975. A similar, but not identical statute was enacted in 1969 as Civil Code section 4801, subdivision (c). Statutes 1969, chapter 1608, section 8, page 3314. That statute provided:

"Except as otherwise agreed by the parties in writing, the court may, upon petition of either party, modify or revoke any decree or judgment granting any allowance to the other party upon proof that the wife is living with another man and holding herself out as his wife, although not married to such man . . . ."

The latter version of section 4801, subdivision (c) was deleted by Statutes 1971, chapter 1675, section 3, page 3600. There are no reported cases interpreting section 4801.5 or the earlier, similar statute incorporated in section 4801, subdivision (c).

days. However, respondent court indicated petitioner's proof that Carole was "living with" Mansell was insufficient. The court stated, "I have no evidence of cohabitation other than the fact that they did buy a trailer and they are living in the trailer. I don't know how many rooms are in the trailer, what their mode of occupancy is, or not. I can just as well assume at this point that she was . . . only there as many men have housekeepers or someone to come in and take care of them." ■ It appears respondent court interpreted the "living with" element of section 4801.5 to mean cohabitation in the sense of engaging in commonly understood marital activities. (See *Kusior* v. *Silver,* 54 Cal.2d 603, 612 [7 Cal.Rptr. 129, 354 P.2d 657]; *S. D. W.* v. *Holden,* 275 Cal.App.2d 313, 314-315 [80 Cal.Rptr. 269].) We conclude that section 4801.5 does not require such extensive proof to establish the element of "living with." The legislative history of the statute confirms this. The original version of the bill (Sen. No. 2392) which became section 4801.5 included the term "cohabited" rather than "living with," and specifically provided that " 'cohabited' shall not be construed to include a situation in which the parties merely share living accommodations." If this version of Senate Bill No. 2392 had survived, respondent court's interpretation here would be correct. However, subsequent versions of Senate Bill No. 2392 deleted the latter language of limitation and, indeed, substituted the very broad term "living with" in place of "cohabited." Thus, petitioner established the element of living with upon the undisputed evidence that Carole and Mansell were merely sharing living accommodations. Respondent court's apparent concern that spousal support must be terminated even if Carole had only assumed the status of Mansell's housekeeper or nurse was unfounded, in any event, since section 4801.5 also requires a showing that Carole was holding herself out as Mansell's wife. The latter requirement would preclude application of section 4801.5 to former spouses who receive support and who obtain employment as true housekeepers or nurses.

■ We arrive now at the final issue of this matter, whether Carole was "holding herself out" as Mansell's wife. As noted above there are no reported cases dealing with section 4801.5 or its forerunner, the former version of section 4801, subdivision (c). Thus, direct precedent is lacking on the meaning of "holding out" as used in section 4801.5. The legislative history is not helpful. "Holding out" does not appear in any other California statutes, of which we are aware, in any sense remotely similar to the present case. Section 248 of New York's Domestic Relations Law contains a provision similar to our section 4801.5,

including the term "holding out."[4] However, none of the reported New York cases that have arisen from the latter statute have discussed the meaning of the term "holding out" or have involved facts similar to the present case.

Ballentine's Law Dictionary, (3d ed. 1969), page 563, defines "holding out" as follows: "Assuming a status, for example holding out to be a carrier." Webster's Third New International Dictionary (Unabridged ed. 1966), page 1079, defines "hold out" as including "to make out to be: REPRESENT [*held* himself *out* as a trained pharmacist]." ■ We deem it sufficient, therefore, to define "holding out" under section 4801.5 as assuming the status of a spouse or representing oneself as such.

■ The evidence shows that Carole assumed the status of Mansell's spouse and represented herself as such in two separate and specific ways. The first of these began when she applied for and obtained telephone service for Space 20. She specifically designated Mansell as her spouse. She related her name as Carole Mansell and at her direction, her name was so listed in the telephone directory. A natural and direct consequence of the directory listing was the representation to the general public that her name was Carole Mansell. Despite her testimony that she did not intend the directory listing to be "Carole Mansell," she admittedly did nothing to correct the impression created by that listing during the several months it existed prior to the hearing before respondent court. The second means by which Carole represented herself as Mansell's spouse was initiated when she and Mansell changed the names on their joint checking account from Murcel Mansell and Carole Lang to Murcel Mansell and Carole Mansell. Thereafter, each check issued on that account impliedly represented to the payee that Carole Mansell was the spouse of Murcel Mansell. Carole admitted signing many such checks herself. In summary, Carole represented herself as Mansell's spouse to the telephone company, to the bank, to anyone who observed the telephone directory listing, and to anyone who received a check from the joint account.

Carole testified that her motive in obtaining the telephone service and directory listing was merely to aid Mansell in obtaining a telephone. She

[4]New York Domestic Relations Law, section 248 presently provides as follows: ". . . . The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife."

also testified that her motive in changing her name to Carole Mansell on the joint account was to facilitate her efforts in helping Mansell pay his bills when he was unable to personally make out and sign the checks. She now contends that such motives should relieve her from the effects of section 4801.5. The sympathy and assistance that she has provided to Mansell, a disabled person, have not been lost on this court. However, her motives for living with and holding herself out as Mansell's wife are not a consideration material to the application *vel non* of section 4801.5. Such considerations are immaterial to the requirement that, in the absence of the parties' written agreement to the contrary, spousal support must terminate upon the actual remarriage of the party receiving support, regardless of that party's motives for remarrying. (See Civ. Code, § 4801, subd. (b). See also *Hilton* v. *McNitt,* 49 Cal.2d 79, 82 [315 P.2d 1]; *In re Marriage of Nicolaides,* 39 Cal.App.3d 192, 200-201 [114 Cal.Rptr. 56].) We discern no reason for varying this principle in interpreting section 4801.5. Further, we note that the materiality of fault, motivation, and the like, has been eliminated from other aspects of our law of dissolution, including the most basic determinations of the division of community property and entitlement to the dissolution itself. There is no indication that the Legislature intended to reintroduce such factors into proceedings under section 4801.5. To do so would inevitably result in the very same peeking into bedrooms and other invasions of privacy that were so common when motivation and fault had significant consequences in a dissolution proceeding.

The legislative history of section 4801.5 provides further support for this view. The digest of Senate Bill No. 2392, which created the section, includes the following hypothetical situation to which the statute would apply: "Assume Husband A leaves Wife B for a third person. Wife B is left with three small children and cannot support herself. Sometime after A has left, B meets C, a nice man, but one who cannot support her because of a physical infirmity. C moves in with B, and they hold themselves out as man and wife. In this case, the only thing that has changed for B is that she has found someone to share her life with. Unfortunately, that person cannot support her, nor can she support herself since she must still raise the children of her marriage to A. Yet, under this bill, A could go into court and terminate his support obligation." The facts of this hypothetical situation are harsher than the apparent facts of the present case. Yet, with this hypothetical situation before it, the Legislature enacted section 4801.5. We therefore find no merit in Carole's contention that her motives in living with and holding herself out as Mansell's wife are a material consideration.

Carole also contends that the term "holding out" should be defined to require holding out to persons who are personally acquainted with her, as opposed to or in addition to the general public. As noted above, there is no evidence that Carole did hold herself out as Mansell's wife to her neighbors or friends. Nevertheless, it does not appear appropriate to limit the scope of the term "holding out" as contended. It is not uncommon in our present society for an unmarried couple to live together and appear to all but their close friends to be formally married. If section 4801.5 were not applicable in such situations, its effect would be severely impinged. Nothing in the terms of the section or in its legislative history suggests that such a broad exception was intended.

We therefore conclude that respondent court abused its discretion in ruling that the proof presented by petitioner was insufficient and in denying petitioner's motion pursuant to section 4801.5. Let a peremptory writ of prohibition issue directing respondent court to desist from enforcement of the spousal support provisions of the judgment, beginning as of January 8, 1975, the date real party in interest commenced holding herself out as the spouse of another person. The alternative writ of prohibition is discharged.

Fleming, Acting P. J., and Compton, J., concurred.