[Civ. No. 62259. Second Dist., Div. One. Feb. 25, 1982.]

In re the Marriage of LEORA and ABRAHAM SASSON.
ABRAHAM SASSON, Appellant, v.
LEORA SASSON, Respondent.

COUNSEL

Charles G. Ewald and Anne M. Beiner for Appellant.

No appearance for Respondent.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Petitioner Abraham Sasson appeals from an order denying his request for termination of spousal support.

### STATEMENT OF FACTS

An interlocutory judgment dissolving the marriage of petitioner and respondent Leora Sasson was entered on August 22, 1977. The judgment approved a marital settlement agreement, and pursuant thereto ordered petitioner to pay respondent spousal support in the nonmodifiable sum of $350 per month for a period of six years commencing April 15, 1977; and thereafter, in the nonmodifiable sum of $250 per month for a period of two years. Spousal support was deemed to be unequivocally nonmodifiable, but was to terminate upon the occurrence of the first of the following events: "Respondent's remarriage; Respondent's death; Petitioner's death, or March 31, 1985 . . . ."

For purposes of decision, the trial court assumed to be true the allegations contained in petitioner's trial brief, to wit: Respondent has been

cohabiting with Shalom Shahar (Shahar) since approximately November 1977; on November 7, 1978, respondent gave birth to a son, signing the birth certificate as "Lee Shahar" and naming Shahar (who she had represented to be her husband) as the father; respondent consistently uses the name "Shahar"; respondent and Shahar share a joint bank account into which respondent has deposited spousal support checks endorsed "Leora Shahar"; and respondent has represented to family and friends and in her community that she is married to Shahar.

Respondent testified that she has not remarried at any time since her marriage to petitioner; she has not applied for a marriage license with any person other than petitioner; and she has not participated in any form of ceremony relating to marriage with any person other than petitioner.

## Contentions

### I

Petitioner contends that the trial court erred in defining remarriage for the purposes of spousal support termination in terms of a de jure or putative marriage only.

### II

Petitioner further asserts that the trial court erroneously and prejudicially excluded reputation evidence of remarriage.

### III

Finally, petitioner avers that the trial court's ruling that Civil Code section 4801.5[1] is inapplicable to the issue of spousal support termination constitutes prejudicial error.

---

[1]Civil Code section 4801.5 provides in pertinent part: "(a) Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex . . . ."

"(b) Holding oneself out to be husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section. . . . . . . . . . . . . . . . . . ."

## DISCUSSION

### ·I

■ There is no merit to petitioner's contention that the trial court erred in defining remarriage for the purpose of spousal support termination in terms of a de jure or putative marriage only. The logical thrust of petitioner's position is that a marital settlement agreement need not define the term "remarriage" in a manner analogous to the statutory definition of marriage; hence, a relationship which falls outside California's statutory definition of marriage but comes within the term as defined in dictionaries or other jurisdiction should be considered a remarriage within the meaning of the settlement agreement. Unfortunately, petitioner's syllogism ignores the nature of the institution of marriage.

Marriage is a civil contract "of so solemn and binding a nature . . . that the consent of the parties alone . . . will not constitute marriage, or create the relationship of marriage . . .; but one to which the consent of the state is also required." (*Mott* v. *Mott* (1890) 82 Cal. 413, 416 [22 P. 1140, 1142].) Inasmuch as the consent of the state is required to create the relationship of marriage, it follows that the state alone may define the relationship.

California defines marriage as: (1) a contract requiring consent, the issuance of a license, and solemnization (Civ. Code, § 4101); or (2) a contract requiring consent and solemnization (Civ. Code, §§ 4101, 4213); or (3) a contract entered into and valid in another jurisdiction (Civ. Code, § 4104). In addition, California recognizes certain putative relationships; that is, facially valid marriages which in fact evidence a failure of consent or capacity and may be attacked by a circumscribed group of interested parties, but which retain validity in the absence of a challenge. (Civ. Code, § 4425.) Inasmuch as the foregoing provisions establish this state's policy with respect to marriage, as well as define the relationship, any attempt to broaden the definition would contravene public policy. Accordingly, the trial court was correct in limiting the definition of remarriage to de jure or putative relationships.[2]

---

[2]We note for the record that petitioner neither alleged nor proved any relationship between respondent and Shahar other than a consensual one. Nor did petitioner either allege or prove that the consensual relationship was entered into in a jurisdiction which validates marriage by consent alone.

## II

There is no greater merit to petitioner's assertion that the trial court erroneously and prejudicially excluded reputation evidence of remarriage. Petitioner relies on Evidence Code section 1314 to establish the relevance of the excluded evidence. ■ While Evidence Code section 1314 does provide that "[e]vidence of reputation in a community concerning the date or fact of . . . marriage . . . is not made inadmissible by the hearsay rule," it does not necessarily follow that such evidence is relevant.

Evidence Code section 1314 had its origin in former Code of Civil Procedure section 1963, subdivision 30[3] which created a presumption that "a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage." In turn, the presumption originated in 1872,[4] when this state recognized the validity of marriage based on consent and the assumption of marital duties. (Civ. Code, § 55, enacted Stats. 1872.)[5] When Civil Code section 55 was amended in 1895[6] to require the solemnization of marriages, the courts began to view reputation evidence with greater suspicion. As noted in *Hite v. Hite* (1899) 124 Cal. 389, 394 [57 P. 227]: "Cohabitation, and holding out to the world that the persons so cohabiting are married, and general reputation, though all admitted, do not of themselves constitute marriage." *Estate of Elliott* (1913) 165 Cal. 339, 343 [132 P. 439] followed, holding that evidence of cohabitation and undivided community repute would not prove marriage in the absence of evidence of solemnization.

It is clear that evidence of community repute, standing alone, must be accorded little significance where the solemnization of marriage is required; to do otherwise would be to render the necessity for solemnization a practical nullity. Petitioner neither proffered nor elicited from respondent any evidence of solemnization, but relied entirely on evidence of cohabitation and community repute. In view of the scant relevance of the excluded evidence under the circumstances, we perceive no error in the trial court's actions.

---

[3]Repealed Statutes 1965, chapter 299, section 110, page 1363.
[4]Added by Statutes 1872.
[5]Repealed Statutes 1969, chapter 1608, section 3, page 3313.
[6]Statutes 1895, page 121.

## III

Petitioner avers that the trial court's ruling that Civil Code section 4801.5 is inapplicable to the issue of spousal support termination constitutes prejudicial error. The gist of petitioner's argument is that, notwithstanding the nonmodifiability of the support provisions, the Legislature intended conduct such as that of respondent to be the equivalent of remarriage, thereby justifying termination of support. We disagree.

As originally enacted in 1974,[7] Civil Code section 4801.5 mandated the revocation of spousal support upon proof that the supported party had been, for 30 days or more, living with a person of the opposite sex and holding himself or herself out as the spouse of the person with whom he or she was living. In its original form, section 4801.5 replaced the discretionary terms of Civil Code section 4801, subdivision (c)[8] with mandatory language, thereby evincing a legislative intent to "effect similar treatment between remarrying spouses and ones foregoing the formalities of the marriage contract." (*In re Marriage of Ludwig* (1976) 58 Cal.App.3d 744, 750 [130 Cal.Rptr. 234].)

However, section 4801.5 was amended in 1976.[9] As amended, it creates a rebuttable presumption of decreased need for support if the supported party is cohabiting with a person of the opposite sex, except to the extent that the parties have agreed otherwise in writing; holding oneself out to be the spouse of the cohabitor is not necessary to the definition of cohabitation. Section 4801.5 presently makes no provision for the revocation of spousal support where the supported party does hold himself or herself out as the spouse. Finally, subdivision (c) of section 4801.5 provides: "Nothing in this section shall preclude later modification of support upon proof of change of circumstances."

■ Beyond question, the repeal of the mandatory revocation provisions *of section 4801.5 and replacement with a rebuttable presumption*

---

[7]Statutes 1974, chapter 1338, section 1, page 2911.

[8]Civil Code section 4801, subdivision (c); added by Statutes 1969, chapter 1608, page 3334; provided: "Except as otherwise agreed by the parties in writing, the court may, upon petition of either party, modify or revoke any decree or judgment granting any allowance to the other party upon proof that the wife is living with another man and holding herself out as his wife, although not married to such man . . . ."

The foregoing version of subdivision (c) was deleted by Statutes 1971, chapter 1675, section 3, page 3600.

[9]Statutes 1976, chapter 380, section 1, page 1028.

of reduced need manifests a legislative intent that those to whom section 4801.5 formerly applied no longer should be subjected to a consequence as harsh as that imposed for remarriage by Civil Code section 4801, subdivision (b). Instead, the latter version of section 4801.5 constitutes a "legislative declaration of state policy that cohabitation by a supported spouse with a person of the opposite sex [whether or not coupled with a representation that the supported party is the spouse of the cohabitor] is not in and of itself sufficient to *revoke* or *reduce* spousal support." (*In re Marriage of Leib* (1978) 80 Cal.App.3d 629, 635 [145 Cal.Rptr. 763]; italics original.) Hence, whatever may have been the case upon the original enactment of section 4801.5, the Legislature since has been at pains to avoid equating cohabitation of any degree with remarriage; we may not substitute our judgment for that of the Legislature in contravention of declared public policy.

██ Further, we cannot agree with petitioner that equity requires a different result. When the parties entered into the marital settlement agreement, section 4801.5 provided ready and beneficial relief from the burden of spousal support in the event respondent entered a relationship of cohabitation which provided her with a substantive means of support. In the face of that remedy, and after expressly providing for the consequences upon remarriage, the parties agreed that spousal support was not to be modifiable upon any ground. (Cf. *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 151 [134 Cal.Rptr. 891].)

Moreover, respondent's conduct is not, as petitioner asserts, analogous to that condemned in *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444 [140 Cal.Rptr. 779]. By eschewing the formality of marriage, respondent has deprived herself of the beneficent protection which the state bestows upon a wife should her partner die or abandon the relationship; what little security respondent may have must derive from another source. (See *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 681 [134 Cal.Rptr. 815, 557 P.2d 106]; approving *Beckman* v. *Mayhew* (1975) 49 Cal.App.3d 529, 534 [122 Cal.Rptr. 604].) Accordingly, respondent is not "savoring the best of two worlds, and capturing the benefits of both" (*In re Marriage of Baragry, supra*, 73 Cal.App.3d 444, 449); rather, she chose the benefits of continued spousal support in lieu of the benefits of remarriage. There is nothing in respondent's exercise of free choice which is inherently repugnant to principles of fairness.

The order is affirmed.

HANSON (Thaxton), J., Concurring.—In the case at bench appellant Abraham Sasson (hereinafter Husband) and respondent Leora Sasson (hereinafter Wife) executed a marital settlement agreement dated May 4, 1977, which was incorporated into the parties' interlocutory judgment entered August 22, 1977.

The marital settlement agreement in pertinent part provides: "[T]hat [appellant] shall pay to respondent as and for spousal support a non-modifiable sum of $350.00 per month for a period of six (6) years, and thereafter for an additional two (2) years a *nonmodifiable* sum of $250.00 per month. Said sums shall be payable one-half on the 1st and 15th day of each month, commencing April 15, 1977, and continuing thereafter until the first to occur of the following events: Respondent's remarriage; Respondent's death; [appellant's] death or March 1, 1985, at which time said spousal support shall forever cease and terminate. *Under no circumstances shall any court of competent jurisdiction have jurisdiction to modify said spousal support as to amount or duration; it being the express intent of this Order that [appellant's] obligation to pay spousal support shall be for a period of eight (8) years on a nonmodifiable basis unless otherwise designated as provided herein.*" (Italics added.)

Husband sought relief before the superior court from paying spousal support to the Wife under Civil Code section 4801.5[1] on the ground that Wife was cohabiting with a person of the opposite sex. Husband's order to show cause "Re: Modification" was heard on April 14, 1980. Wife did not contest Husband's assertion that she was living with another man, Shalom Shahar, since November of 1977; that she had a son by Mr. Shahar; that the birth certificate shows the child's name as "Lee Shahar" and Shalom Shahar as the father; that Wife signed medical and other documents stating that Shalom Shahar was her "husband"; that Wife consistently used the name "Shahar" and referred to herself as Mrs. Leora Shahar; that Wife and Shalom Shahar shared a joint bank account under the name "Shahar" and Wife had endorsed spousal support checks from Husband and deposited them into the joint account with Shalom Shahar; and that Wife consistently represented to her family, friends and to the community that she was married to Shalom Shahar.

---

[1]Civil Code section 4801.5 provides: "(a) *Except as otherwise agreed to by the parties in writing*, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the

The only rebuttal testimony presented by Wife at the order to show cause hearing on April 14, 1980, consisted of Wife's testimony that she had not applied for a marriage license and never entered into a formal marriage ceremony since her marriage to Husband. The trial court denied Husband's request for modification[2] and Husband appeals from that ruling.

The case of *In re Marriage of Leib* (1978) 80 Cal.App.3d 629 [145 Cal.Rptr. 763], is factually and procedurally distinguishable and not helpful to a resolution of the case at bench. In *Leib* the spousal support was determined by the court. Here, there is a settlement agreement which included a provision for spousal support which was incorporated in the interlocutory judgment of dissolution. In addition, in *Leib* evidence was taken in the trial court directed at rebutting the presumption of wife's decreased need by reason of the cohabitation. In the case at bench there was no evidence taken pertaining to such need. The only rebuttal evidence was Wife's testimony that she had never remarried.[3]

■ I conclude, as does the lead opinion, that the trial court properly denied Husband's request for modification. Here, the parties expressly agreed in their marital settlement agreement incorporated into the interlocutory judgment that spousal support was "nonmodifiable" and was to continue for the periods and in the amounts agreed

---

opposite sex. Upon such a finding of changed circumstances, the court may modify the payment of support as provided for in subdivision (a) of Section 4801. (b) Holding oneself out to be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section. (c) Nothing in this section shall preclude later modification of support upon proof of change of circumstances." (Italics added.)

[2]The trial court in denying Husband's request for modification stated:

"Counsel, we're all concerned about this problem. There are income tax aspects to be considered. Persons who deliberately divorce and live together to avoid the added tax that a marriage will incur, which is being addressed by Congress currently. Your particular problem involved in this case is one that should be addressed by the legislature. I envision, for example, what would happen if the Respondent's boyfriend dies. Does she claim under Marvin, or does she claim as a spouse? And I think at the moment she'd have to claim under Marvin and not as a spouse. So there's pros and cons whichever way. At the moment the remedy, unfortunately, is not judicial but legislative."

[3]The case of *In re Marriage of Leib, supra*, 80 Cal.App.3d 629, involved a motion brought by ex-husband under Civil Code section 4801.5, as amended in 1976, for his ex-wife to show cause why the portion of the dissolution judgment requiring him to pay monthly spousal support should not be revoked since the ex-wife was cohabiting with another man of substantial annual income. The trial court held that the evidence rebutted the presumption of decreased need through their cohabitation. The Court of Appeal reversed with directions to the trial court to enter a finding that the statutory presumption was not overcome by the evidence and to reduce spousal support to $10 per month.

upon and was to terminate only upon the occurrence, amongst others, of Wife's "remarriage." "[S]uch an agreement is specifically authorized by section 4811, subdivision (b). The agreed spousal support is therefore not modifiable[4] whether or not facts exist that would bring section 4801.5 into play." (*In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 151-152 [134 Cal.Rptr. 891].)

However, unlike the views expressed in the lead opinion, I tend to agree with Husband's characterization of the Wife's status as one "presumably enjoying a captain's paradise, savoring the best of two worlds, and capturing the benefits of both." (*In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 449 [140 Cal.Rptr. 779].)[5] This must be so when a Wife can elect to "Marvinize" rather than remarry in order to insure that "alimony" will keep coming in while engaging in a meretricious relationship and even bearing children out of wedlock while setting the stage for a possible future "palimony" suit against a present paramour.

Moreover, in all probability a portion of Husband's support payments to Wife go to support her new paramour and the child fathered by another man since the support moneys are deposited in a joint account with Mr. Shahar. However, as unjust, one-sided and warped as such a state of affairs may appear to be, Husband is unfortunately bound by his own marital settlement agreement since Wife's testimony that she has never remarried is uncontradicted.

In view of the state Supreme Court's case of *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], and the Legislature's enactment of the current Civil Code section 4801.5, it would appear advisable for spouses who are paying support moneys pursuant to a marital settlement agreement (usually the husband) to incorporate in such agreements a provision for termination of spousal support in the event the spouse receiving the support payments elects to cohabit with a paramour rather than enter into a formal marriage contract to insure that a former spouse's support payments continue to roll in.

I also join in the concerns expressed by the trial judge (see fn. 2, *ante*). In my view the state Supreme Court in its blind rush to achieve

---

4"... 'Modification' is the broader term and encompasses the term 'termination'. In the context of the case at bench 'termination' is nothing more than a 'modification' to zero." (*In re Marriage of Harris, supra*, 65 Cal.App. 3d at p. 152.)

5The *Baragry* facts and issues are different and do not involve a settlement agreement in the nature entered into by the parties in the instant case.

by judicial decree complete equality between the sexes by its *Marvin* decision unwisely inflicted grievous injury on the very institution of marriage itself which is one of the basic legal and moral foundational blocks underpinning our society. I, therefore, urge the state Legislature to reassess the damage, confusion and impact on the courts caused by the *Marvin* decision and restore by legislative enactment some semblance of propriety in human relationships and dignity to this volatile field of law.

I concur in the judgment.

Lillie, J., concurred.