[Civ. No. 15477. Fourth Dist., Div. Two. May 27, 1976.]

In re the Marriage of BERYL E. and BERNARD M. LUDWIG.
BERYL E. LUDWIG, Appellant, v.
BERNARD M. LUDWIG, Respondent.

## Counsel

Chet Potter for Appellant.

Clayson, Rothrock & Mann and Erling C. Arend for Respondent.

## Opinion

**THE COURT.**—A final judgment of dissolution was entered on July 19, 1972. Thereafter on December 17, 1974, husband filed his order to show cause petition for termination of spousal support. On March 19, 1975, the court ordered termination of spousal support as well as restitution of spousal support payments made by husband after June 29, 1973.

The modification and restitution orders were made pursuant to the authority of Civil Code section 4801.5.[1] In accordance with that statute,

---

[1]Civil Code section 4801.5 reads: "Upon the petition of a spouse who has been ordered to pay support under Section 4801, the court shall revoke the order for support upon proof that the spouse to whom support has been ordered to be paid is living with a person of the opposite sex and holding himself or herself out as the spouse of the person for a total of 30 days or more, either consecutive or nonconsecutive, although not married to the person. The court shall order the restitution of any support which has been paid since the date upon which the spouse to whom support has been ordered to be paid commenced holding himself or herself out as the spouse of the person."

the court found that wife lived with one Franklin A. Elliott and held herself out to be his spouse.

On appeal wife contends that (1) the restitution provisions of the statute may not be applied to periods prior to the effective date of January 1, 1975; (2) the statute is invalid to the extent it allows restitution for any period because spousal support accrued or paid is a vested right; and (3) the facts of this case are insufficient to support the termination and restitution orders.

## I

On the face of the statute restitution is allowed for monies paid but the statute does not state whether the restitution period is limited only to the effective date of the statute or relates farther back in time to *whenever* the operative act specified in the section occurred.

Wife relies on the rule of statutory construction that legislative enactments are generally presumed to operate prospectively rather than retroactively. (*In re Marriage of Bouquet,* 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Mannheim* v. *Superior Court,* 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17]; *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865]; *Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190, 195 [272 P.2d 757]; *East Bay Municipal U. Dist.* v. *Garrison,* 191 Cal. 680, 692 [218 P. 43]; *Vanderbilt* v. *All Persons, etc.,* 163 Cal. 507, 513 [126 P. 158]; Civ. Code, § 3.) In *DiGenova* the court found that "[i]t is settled therefore that no statute is to be given retroactive effect unless the Legislature has expressly so declared and that this rule is not limited by a requirement that a statute be liberally construed to effect its objects and promote justice." (At p. 174.) ■ The presumption instead is for prospective application. (*Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596, 614 [195 P.2d 501] [disapproved on another point in *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846, 850 (313 P.2d 854)].) However, application of the prospective presumption is only appropriate where it is impossible to ascertain the legislative intent. (*In re Marriage of Bouquet, supra,* at pp. 587, 591.) The presumption against retroactivity is "completely irrelevant" once there is evidence from which the legislative intent may be deduced. (*In re Marriage of Bouquet, supra,* at p. 591, fn. 6.)

In *Bouquet* the court concluded that the amended provisions of Civil Code section 5118 were intended to operate retroactively.[2] In reaching its

[2]All statutory references in this opinion are to the Civil Code.

conclusion the court was faced with a statute that gave no clue on its face regarding retroactivity. Such is the case before us. However, in contrast to *Bouquet,* here we have been unable to locate any material indicating a legislative intent that the statute's restitution provision is to be applied to periods prior to its effective date.

Prior to the enactment of section 4801.5, if the supported spouse chose to forgo the formal marriage contract and instead lived with a third person in the manner often called a "common law marriage," there was no termination of support monies as a matter of law. Instead, the supported spouse retained the right to receive support monies until such time as the paying spouse brought a motion for modification. (See *Grant* v. *Grant,* 52 Cal.App.2d 359 [126 P.2d 130].) Then, only upon a showing of changed circumstances could the spousal support order be modified; it was not enough that a meretricious relationship was being maintained. (See *Double* v. *Double,* 248 Cal.App.2d 650 [56 Cal.Rptr. 687].) There was no bona fide issue of restitution under any circumstances.

In *Double* the paying spouse argued that the meretricious relationship maintained by the supported spouse constituted a sufficient ground for terminating support. In rejecting the contention, the *Double* court observed that the proposition was supported only by dicta in two cases and that by statute in California there was no basis for such a ground justifying termination. The legislative response to *Double* was swift. Former section 139 was amended in 1967 and this amendment carried over to now former section 4801, subdivision (c). The Legislature specifically provided that the court could modify or revoke support where the supported spouse lived with another holding himself or herself out as the spouse of that third person. There were no restitution provisions enacted.

After the passage of the Family Law Act, in 1971 the Legislature reconsidered its response to *Double* and repealed the amendment (then codified in § 4801, subd.(c).) The Family Law Act had eliminated the concept of fault and the revocation of section 4801, subdivision (c), was intended to recognize that it was economic circumstances, not private sexual conduct, that should serve as the basis of modification or revocation. At the time of repeal, argument was presented before the Legislature that then section 4801, subdivision (c), was inconsistent with the no fault concepts of the Family Law Act.

Thus, in 1973 when wife commenced holding herself out as the spouse of Franklin A. Elliott, there were no restitution provisions in the law as to any spousal support she received. The repeal of former section 4801, subdivision (c), returned the law to its earlier state leaving as the sole threat to continued support payments the possibility that husband would bring a modification action and show sufficient changed circumstances to reduce or terminate future support payments.

Obviously, in enacting section 4801.5 the Legislature was aware that many persons had acted in reliance on the repeal of former section 4801, subdivision (c). The Legislature, of course, was also aware that giving section 4801.5 full retroactive application would create monumental burdens on some spouses that had regularly received support money for long periods prior to section 4801.5. In most cases the support money was presumably long gone and the ability to repay it often nonexistent. For example, in the instant case restitution to the effective date of the statute would involve something between $3,150 and $4,500. A $200 per month support order paid for five years would require restitution of $12,000.

■ In light of the heavy unanticipated burdens retroactive application would cause, we think the Legislature's silence as to retroactive application was intentional. In any event, the presumption of prospective application is controlling.

To the extent the court below ordered restitution for the period prior to January 1, 1975, the judgment must be reversed.

## II

A further contention is made that section 4801.5 is invalid to the extent that it requires restitution for periods subsequent to the effective date of the statute. Wife contends that the statute may not be applied retroactively to its effective date because she had a vested right to the spousal support money already received. Wife's reliance is placed on an avalanche of cases holding that spousal support may not be retroactively modified. This limiting rule prohibits *retroactive judicial modification.* (E.g., *Keck* v. *Keck,* 219 Cal. 316, 320-321 [26 P.2d 300]; *Double* v. *Double, supra,* 248 Cal.App.2d 650, 652; *Vick* v. *Superior Court,* 239 Cal.App.2d 105, 108 [47 Cal.Rptr. 840].) The rule originated from Civil Code section 139 as enacted in 1872 which granted judicial power to modify "from time to time." As interpreted by the courts, the language represented a legislative intent that only prospective modification

authority was granted to the courts. (*Parker* v. *Parker*, 203 Cal. 787, 795 [266 P. 283]; *Bruton* v. *Tearle*, 117 Cal.App. 696 [4 P.2d 623]; *Rinkenberger* v. *Rinkenberger*, 99 Cal.App. 45, 48-52 [277 P. 1096]; *Soule* v. *Soule*, 4 Cal.App. 97, 106-107 [87 P. 205].) Then, in 1951, the Legislature acted in a manner consistent with prior judicial interpretation by amending section 139 to declare that only prospective modification was allowed the courts. Current Civil Code section 4801 has carried forward this limitation of judicial power with the exception of allowing retroactive modification "to the date of the filing of the notice of motion or order to show cause to modify or revoke . . . ." The legislatively drawn limitations continue to be recognized in recent cases. (E.g., *Armstrong* v. *Armstrong*, 15 Cal.3d 942, 950 [126 Cal.Rptr. 805, 544 P.2d 941].)

The history of the California scope of support modifications has rested with a determination of the breadth of power legislatively granted.

The right to spousal support, the limitations on its modification, the circumstances for its termination and the judicial power to order refunding of money paid all derive from legislative enactment. In matters of spousal support the power of the court is no more nor less than that declared by the Legislature. ■ Thus the judicial rule of prospective modification is inapplicable herein due to legislative action and no impediment appears to the legislative direction of restitution contained in section 4801.5.

We have considered the restitution provision as a judicial modification; in reality it is something less in terms of vested rights. The Legislature has provided in section 4801, subdivision (b), that unless otherwise agreed in writing, the spousal support obligation terminates upon remarriage of the supported spouse. (*Berkely* v. *Berkely*, 269 Cal.App.2d 872, 872-873, 874 [75 Cal.Rptr. 294]; *Hansen* v. *Hansen*, 93 Cal.App.2d 568, 570-571 [209 P.2d 626].) ■ It is obvious that the enactment of section 4801.5 is a legislative effort to effect similar treatment between remarrying spouses and ones forgoing the formalities of the marriage contract. Effective January 1, 1975, the Legislature declared that the living arrangement selected by wife would have the effect of terminating her right to further support payments from her former husband. Upon occurrence of the section 4801.5 operative acts, there is no right to receive further spousal support payments. It is fundamental that there is no vested right to retention of spousal support after the right thereto has terminated.

█ Upon receipt of support money after January 1, 1975, where a spouse is holding himself or herself out in the manner operative under section 4801.5, the receiving spouse is no more than an involuntary trustee of the funds received. Upon proper motion to the court and proof of the operative facts to the satisfaction of the court, its order properly shall issue requiring return of those funds.

The restitution order herein, to the extent it related back to January 1, 1975, is valid.

### III

Due to the minimal record provided to this court on appeal, we cannot reach the final contention that the findings of the lower court are insufficient.

Order reversed with directions to enter an order in accordance with the views expressed in this opinion. Each party is to bear their own costs on appeal.