[Civ. No. 20388. Fourth Dist., Div. Two. Aug. 29, 1979.]

In re the Marriage of MELBA L. and EUGENE T. THWEATT.
MELBA L. THWEATT, Respondent, v.
EUGENE T. THWEATT, Appellant.

**COUNSEL**

John R. Marcus for Appellant.

Richard A. Granowitz and Ron R. Goldie for Respondent.

## OPINION

**THE COURT.**—Husband appeals from the denial of his motion for modification of spousal support by reduction or termination thereof. The trial court heard three motions at the time for hearing below. Modifications upward and downward by wife and husband, respectively, were denied. Husband was found in contempt of court for his wilful nonpayment of spousal support for the entire year of 1978 up to the date in early May, when the contempt proceedings were filed.

■ On appeal husband's basic premise is that it was established that wife was cohabiting with a person of the opposite sex which created a rebuttable presumption of decreased spousal support need which she failed to adequately rebut.

The marriage was apparently of 30 years' duration. The dissolution was in 1974. Wife is a 50-year-old unemployed bartender living on unemployment. The spousal support amount is $160 per month. Husband is a general contractor netting about $18,000 per year but anticipated a net closer to $14,000 in 1978.

The evidence is that wife rented a house. Several months later a man named Muldrow moved into the house and commenced contributing one-half the rent, utilities and food. Shortly thereafter Muldrow's 20-year-old son also moved in and the man and his son commenced a contribution of one-third each of the expenses.

There is no marital-type arrangement. Each person has their own bedroom and Muldrow and wife each date third parties. During the marriage of husband and wife, Muldrow lived with the two of them for three years and contributed money for his share of the expenses.

Muldrow testified that he did not plan to marry wife and had not discussed marriage with her. Wife testified there was no romantic involvement between her and Muldrow. She explained that during her marriage there was a period of time she had dated Muldrow with husband's consent. Husband testified that dating Muldrow was not the cause of the breakdown of the marriage.

Finally, wife testified she had previously had female roommates with whom to share expenses.

The issues on appeal center on the meaning and effect of Civil Code section 4801.5 which creates a rebuttable presumption, affecting the burden of proof, of a decreased spousal support need where the supported spouse is cohabiting with a person of the opposite sex.[1]

In 1976 the Legislature substantially amended Civil Code section 4801.5. Prior to the amendment it provided for mandatory revocation of spousal support upon proof that the supported spouse was living with a person of the opposite sex and holding himself or herself out as a spouse of that person for 30 days. The statute was in some respects harsh. (See *In re Marriage of Ludwig,* 58 Cal.App.3d 744, 750-751 [130 Cal.Rptr. 234].)

Under Civil Code section 4801.5, as currently written, it is unnecessary to show that the supported spouse is holding himself or herself out as the husband or wife of the third party. However, in order to take advantage of the rebuttable presumption of decreased spousal support need it is necessary to establish that the supported spouse is cohabiting with a person of the opposite sex.

Husband says wife is cohabiting and wife says she is not cohabiting. The only case which has interpreted the current provisions of Civil Code section 4801.5 is *In re Marriage of Leib,* 80 Cal.App.3d 629 [145 Cal.Rptr. 763]. The meaning of cohabitation within the context of the statute was not at issue in that case and not decided because cohabitation was an admitted fact. (At p. 636.) In a passing reference the *Leib* court, by implication, thought that a platonic relationship might suffice under Civil Code section 4801.5. (At p. 640.) However, a platonic relationship was not the type of relationship at issue in *Leib.*[2]

---

[1]Civil Code section 4801.5 reads:

"(a) Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex. Upon such a finding of changed circumstances, the court may modify the payment of support as provided for in subdivision (a) of Section 4801.

"(b) Holding oneself out to be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section.

"(c) Nothing in this section shall preclude later modification of support upon proof of change of circumstances."

[2]If *Leib* applied in this case it would be necessary to determine the money value of wife's gift to Muldrow and/or his son of her services as homemaker, housekeeper, cook and companion. The money value would then be treated as part of her income. We need express no view in this case as to whether we agree with *Leib* in this regard.

In a discussion of Civil Code section 4801.5 in the Pacific Law Journal's *Review of Selected 1976 California Legislation* we find the following: "Cohabitation has been defined as the mutual assumption of marital rights, duties and obligations that are usually manifested by married people, including but not necessarily dependent upon sexual relations [Boyd v. Boyd, 228 Cal.App.2d 374, 381, 39 Cal.Rptr. 400, 404 (1964)]. It has also been held that while one judicially recognized definition of the term is sexual intercourse, it can also mean living together in the same abode [Nacht v. Nacht, 167 Cal.App.2d 254, 261, 334 P.2d 275, 280 (1959)]. Thus, while cohabitation normally involves a meretricious relationship, it appears that under these judicial definitions a couple living together in a platonic relationship who are merely sharing a house and expenses could conceivably have a sufficient relationship to raise the presumption of decreased need for support." (8 Pacific L.J. 321.)[3]

Here there is no evidence of a sexual relationship existing between wife and either man residing in her home. If the presumption of Civil Code section 4801.5 is applicable herein, it is because there is cohabitation of a nonsexual platonic nature in existence.

The statute is not by its terms operative merely when it is shown that the supported spouse is living with a person of the opposite sex. If that had been the standard chosen by the Legislature it would have presumably said so as such language was contained in the superseded section. When the Legislature chose to use "cohabiting" it was selecting a word of particular legal significance that carries more meaning than two persons of the opposite sex living under the same roof.

Where the evidence is something akin to a boarding house arrangement we are convinced it does not constitute cohabitation within the meaning of Civil Code section 4801.5. In *Leib*, for instance, excluding any sexual relationship, we find a one-on-one relationship between man and woman where the parties vacationed together, mostly at the expense of the man, the man provided the woman with a vehicle, paid a bulk of routine living expenses and in turn the nonworking woman provided the man with the services of homemaker, housekeeper, cook and companion. This was not a boarding house arrangement.

In *Lang* v. *Superior Court*, 53 Cal.App.3d 852 [126 Cal.Rptr. 122], the former provisions of Civil Code section 4801.5 were considered. The

---

[3]Cohabit, by dictionary definition, means "[t]o live together in a sexual relationship when not legally married." (The American Heritage Dictionary of the English Language.)

court found that the "living with" provision as then contained in the statute encompassed an arrangement that was something less than cohabitation. There the trial court stated: " 'I have no evidence of cohabitation other than the fact that they did buy a trailer and they are living in the trailer. I don't know how many rooms are in the trailer, what their mode of occupancy is, or not. I can just as well assume at this point that she was . . . only there as many men have housekeepers or someone to come in and take care of them.' " The appellate court reasoned that "It appears respondent court interpreted the 'living with' element of section 4801.5 to mean cohabitation in the sense of engaging in commonly understood marital activities. (See *Kusior* v. *Silver,* 54 Cal.2d 603, 612 [7 Cal.Rptr. 129, 354 P.2d 657]; *S. D. W.* v. *Holden,* 275 Cal.App.2d 313, 314-315 [80 Cal.Rptr. 269].) We conclude that section 4801.5 does not require such extensive proof to establish the element of 'living with.' The legislative history of the statute confirms this. The original version of the bill (Sen. No. 2392) which became section 4801.5 included the term 'cohabited' rather than 'living with,' and specifically provided that ' "cohabited" shall not be construed to include a situation in which the parties merely share living accommodations.' If this version of Senate Bill No. 2392 had survived, respondent court's interpretation here would be correct. However, subsequent versions of Senate Bill No. 2392 deleted the latter language of limitation and, indeed, substituted the very broad term 'living with' in place of 'cohabited.' Thus, petitioner established the element of living with upon the undisputed evidence that Carole and Mansell were merely sharing living accommodations." (At p. 858.)

Subsequent to the *Lang* decision "living with" was removed and cohabitation made the standard. We are convinced that with this statutory change it is not enough to show the supported spouse and the person of the opposite sex "were merely sharing living accommodations."

Here wife has two male boarders sharing expenses. There is no evidence of a sexual relationship, a romantic involvement, or even a homemaker-companion relationship between either of the men and wife. Under such circumstances we find that there is no cohabitation within the meaning of Civil Code section 4801.5 and therefore the presumption of decreased need is inapplicable.

■ Exclusive of the presumption, is there evidence of actual decreased need on the part of the wife? Wife is a 50-year-old unemployed bartender and waitress on unemployment who is having difficulty gaining

employment because of her age (employers are looking for younger women, she says).

Wife confirmed the accuracy of her financial declaration in her testimony. The house rental figure did not include the contributions of her two boarders toward the rent but otherwise the declaration strictly shows her own expenses. She thus has an unemployment income of $328 per month and an actual monthly expense figure of about $374 per month. With spousal support her income is $488 per month which is an apparent mathematical excess of $114 per month above need. This excess is in direct relationship to the contributions toward rent of the two men in wife's home. Without that contribution wife's expense picture would be $490 and income $488. However, husband failed to pay support during the same period.

No findings were requested or made in this case which leaves several alternate bases upon which the trial court's denial of husband's modification motion can be sustained on the record before us. First, the fact that husband had not paid any spousal support for nearly a half a year and was in contempt of court was a sufficient basis for denying husband's modification motion. (*Triest* v. *Triest,* 67 Cal.App.2d 320, 323-324 [154 P.2d 2]; see *Moore* v. *Moore,* 133 Cal.App.2d 56, 62 [283 P.2d 338].)

Second, husband's nonpayment of spousal support leaving wife with an unmet need for a continuing period could have been taken into account by the court in evaluating the actual current financial picture of wife. Third, the court undoubtedly considered the frugal expenses listed by wife including such items as $8 a month for incidentals, $10 per month for entertainment, no vehicle, no medical insurance and so forth.

In specifying the factors to be taken into account by the court on the support question, Civil Code section 4801 directs consideration of the "needs." The statute makes no reference to need as derived from a form financial statement demonstrating actual current expenses. If, for example, a financial declaration showed an actual current monthly food expenditure of $20, that sum would be unreasonable and would not control the court.

Often the exaggerated expenses of a financial declaration are addressed by this court. While understatement of expenses is rare, here there is reason to believe the court below took into account the bare bones figures presented by wife.

In sum, given the circumstances peculiar to this case, we cannot hold, as a matter of law, that the trial court abused its discretion in denying husband's motion for modification of spousal support.

Affirmed.