■ BERNARD BROWN, Appellant-Respondent, v MIRIAM BROWN, Respondent-Appellant.—In an action for divorce and ancillary relief, the plaintiff husband appeals from so much of an order of the Supreme Court, Queens County (Beerman, J.), entered February 15, 1984 as, after a hearing, (1) denied those branches of his motion which were (a) to terminate the support provisions of a judgment of divorce, and (b) for counsel fees, and (2) granted that branch of the defendant wife's cross motion which sought a money judgment for arrears in support payments, and the defendant cross-appeals from so much of the same order as denied that branch of her cross motion which was for counsel fees.

Order modified, on the law, by deleting the provision thereof denying the respective applications of the plaintiff and defendant for counsel fees. As so modified, order affirmed insofar as appealed from, with costs to the defendant, and matter remit-

ted to the Supreme Court, Queens County, for a hearing on the issue of counsel fees.

A stipulation incorporated, but not merged, into the judgment of divorce provided, *inter alia,* that the plaintiff would continue to pay support to the defendant "until such time as the defendant remarries, dies or lives with another man". Alleging that the defendant had been living with a man in violation of the agreement, the plaintiff moved for an order terminating his obligation to pay support.

Evidence adduced at a hearing conducted by Special Term revealed that the defendant had been renting the lower two levels of the four-level marital home to a male tenant at the rate of $300 per month. The defendant's testimony as to the rental arrangement was corroborated by copies of her tax returns on which she had declared as income the rent she received. The tenant moved into the lower levels of the marital home in January 1981 and continued to live there through November 1983. He was a friend of the defendant's brother and had known the defendant and her family for several years before moving into the premises.

The credible evidence demonstrated that the defendant's tenant slept in the second-level den while the defendant slept in her fourth-level bedroom. A door separates the second and third levels. Although all doors to the house could be opened by the same key, there were separate entrances to the respective living quarters. There was no evidence that the defendant and her tenant ever slept together or had engaged in sexual relations, nor was there evidence that they socialized together, except on those occasions when they visited the defendant's brother. They did not have their meals together and did not cook for or purchase food for each other.

Although the evidence revealed that the tenant and the defendant had, at various times, held several joint bank accounts, some of which had been opened prior to his occupancy of part of the marital home, there was no indication of the purpose of these accounts. Most importantly, there was no evidence that either provided financial support to the other.

Although Special Term correctly concluded that it was the plaintiff's burden to prove that the defendant had violated the terms of the stipulation, it incorrectly held that the burden had to be sustained by clear and convincing evidence *(see, Brown v Brown,* 122 Misc 2d 849, 850). However, even when the correct preponderance of the evidence standard is applied *(see, Smith v Smith,* 88 AD2d 658; *Spillman v Spillman,* 67

AD2d 942, *affd* 49 NY2d 745), the record supports the court's determination that the plaintiff failed to demonstrate that the defendant had forfeited her right to support under the stipulation by living with another man.

To the contrary, the evidence did not establish that the defendant and her tenant shared household expenses or a bedroom, or that they functioned as an economic unit *(see, Scharnweber v Scharnweber,* 105 AD2d 1080, *affd* 65 NY2d 1016).* Therefore, that branch of the plaintiff's motion which was to be relieved of his obligation to pay support was correctly denied.

However, the respective applications of the parties for counsel fees should not have been summarily denied without an evidentiary hearing *(see, Sadofsky v Sadofsky,* 78 AD2d 520). Accordingly, the matter must be remitted for a hearing on this issue. Bracken, Niehoff and Kunzeman, JJ., concur.

Weinstein, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof which denied that branch of the plaintiff's husband's motion as sought to be relieved of his obligation to pay support, and by substituting therefor a provision granting that branch of the husband's motion, and by deleting the provision thereof denying the respective applications of the plaintiff and defendant for counsel fees, and remitting the matter to the Supreme Court, Queens County, for a hearing on the issue of counsel fees, with the following memorandum, with which Thompson, J. P., concurs:

It is my view that the majority's decision fails to accord due recognition to contemporary social realities. In his dissent in *Northrup v Northrup* (43 NY2d 566, 572), Chief Judge Wachtler characterized his colleagues' interpretation of Domestic Relations Law § 248 as "narrow, technical and unrealistic" and criticized a statutory loophole which permitted a former wife to continue to collect support from her former husband although she was living with another man, as long as she simply avoided formalizing the relationship with a marriage ceremony. In his view, the Legislature intended for courts to consider the extent of the wife's new relationship without regard to formalities and to recognize current social realities in applying the statute.

The social climate today, as contrasted with that prevailing in 1938 when Domestic Relations Law § 248 was enacted, has undergone notable changes. As noted in a recent decision of the Family Court, Westchester County *(Nanette M. v Gerald*

*S. M.,* NYLJ, Mar. 6, 1986, p 18, col 4 [Miller, J.]): "Modern differences are obvious. Today, married women frequently prefer to retain their maiden names for professional or other reasons. Telephone listings create little inference as to marital status. It is often difficult to ascertain the marital status of men or women by name or observation of their living arrangements. Unmarried couples living together are largely accepted socially and professionally without question or comment".

Notwithstanding its recognition that "the construction of the statute compelled by the plain meaning of its language may, in some instances, 'convert the shield of the statute into a sword of inequity, dependent only upon the deftness with which a former spouse can parry assertions that her conduct in a protracted relationship is marital in substance' *(Matter of Bliss v Bliss,* 107 AD2d 394, 397)" the Court of Appeals has recently held that proof of cohabitation alone is insufficient to warrant a termination of support obligations pursuant to Domestic Relations Law § 248 *(Matter of Bliss v Bliss,* 66 NY2d 382, 389, *revg* 107 AD2d 394). Rather, it is necessary, under the aforesaid statute, to demonstrate both cohabitation and conduct by the former wife amounting to a "holding out" that she is married to her paramour.

Were we constrained to apply Domestic Relations Law § 248 to the facts of this case, therefore, a decision favorable to the defendant would be mandated in view of the total absence of any evidence that the defendant held herself out as another's wife. However, the parties herein had entered into a stipulation which was incorporated but not merged into the judgment of divorce, and which obligated the plaintiff to pay the weekly sum of $325 "until such time as the defendant remarries, dies or lives with another man". The clear intent of the parties in inserting this provision was to provide for forfeiture of support by the defendant, even absent a finding that she held herself out as married to another male, as long as there was evidence that she was living with him. There would have been no point in adding such a stipulation if the only protection it afforded the defendant was that already afforded by statute. Where, as here, the parties have voluntarily entered into such an agreement, the court may not refuse to enforce it absent some overriding public policy reason not present here *(Scharnweber v Scharnweber,* 65 NY2d 1016, 1017). The existence of the aforesaid stipulation differentiates this case from *Matter of Bliss v Bliss (supra)* and compels a result favorable to the plaintiff.

In the instant case, the former wife and her purported

"tenant" engaged in conduct inconsistent with a mere land-lord-tenant relationship. The defendant admitted that her "tenant" resided in the one-family marital residence from January 1981 through November 1983. Although they allegedly resided on different levels, he was not restricted to enter and exit the residence via a separate entrance. On the contrary, he had a key which opened the front entrance to the residence. He had no telephone of his own and was free to make unlimited local calls on the defendant's telephone. He was expected to reimburse her for long distance calls.

The defendant's "tenant's" car was available for her use, and she continued to use it during the trial. Although the defendant claimed to have received monthly cash payments from her "tenant", she had no records of such payments. Copies of her tax returns indicating yearly rent receipts of $3,600 were introduced in evidence. Although those tax returns were allegedly prepared by an accountant, the copies failed to include the name, address and social security number of the accountant used, thus impugning their authenticity. The defendant made no attempt to procure the original forms from the Internal Revenue Service by means of a 4506 form. Most significantly, the defendant and her alleged "tenant" had a joint safe-deposit box at a branch of the Roosevelt Savings Bank as of May 9, 1981. She acknowledged that she closed the box on December 13, 1983, the day before she testified. Upon being shown a bank signature card, the defendant further acknowledged closing out, on December 12, 1983, a joint savings account which she had held with her "tenant". She had also held a six-month certificate of deposit which she had purchased with him in June 1979. In all, the record reveals that the defendant has held at least eight joint bank accounts with her "tenant", at least one of which remained open at the time of trial.

In view of the defendant's long-term residence with her "tenant" in the same dwelling and their apparent functioning as an economic unit, it is unreasonable, in my view, to accept the defendant's charade that he was merely her "tenant". I conclude that the plaintiff established, by a preponderance of the evidence, that the defendant was living with another man and is, consequently, no longer entitled to receive alimony payments (see, Smith v Smith, 88 AD2d 658). Although cases decided on the basis of Domestic Relations Law § 248 are distinguishable from the case at bar which is based on a stipulation of settlement rather than the statutory provision, the same right is at stake in both situations, i.e., the right to

receive alimony or maintenance. Accordingly, the same standard of proof—a preponderance of the evidence—should apply. I would, therefore, grant that branch of the plaintiff husband's motion as sought to be relieved of his obligation to make support payments. *[See,* 122 Misc 2d 849.]