NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DARLENE D. ATKINSON,                      )
                                          )
          Appellant/Cross-Appellee,       )
                                          )
v.                                        )      Case No:  2D13-5815
                                          )
RONALD L. ATKINSON,                       )
                                          )
          Appellee/Cross-Appellant.       )
_____    )

Opinion dated February 11, 2015.

Appeal from the Circuit Court for
Hillsborough County; Ashley B. Moody,
Judge.

Elizabeth S. Wheeler of Berg & Wheeler,
P.A., Brandon, for Appellant/Cross-Appellee.

Christian D. Denmon, Nicole Denmon,
and Andrew Plagge of Denmon & Denmon,
P.A., Tampa, for Appellee/Cross-Appellant.


WALLACE, Judge.

          Darlene D. Atkinson (the Former Wife) challenges the trial court's order

that terminated the obligation of Ronald L. Atkinson (the Former Husband) to pay

permanent periodic alimony.  The trial court based its order on a ruling that the Former

Wife had been engaged in "cohabitation with a male" within the meaning of the parties'

Marital Settlement Agreement (the MSA).  The Former Husband cross-appeals.  He

challenges the trial court's findings that the Former Wife was not engaged in a "supportive relationship" within the meaning of section 61.14(1)(b), Florida Statutes (2011), and that there was no substantial, permanent change in the circumstances of the parties that would support a reduction or termination of the alimony obligation. On the Former Wife's appeal, we reverse the order because the trial court erred in ruling that the mere presence of a male tenant in the Former Wife's residence amounted to "cohabitation with a male" within the meaning of the MSA. We affirm on the Former Husband's cross-appeal because the trial court's findings with regard to the absence of a "supportive relationship" and a substantial change in circumstances are supported by competent, substantial evidence.[1]

## I. THE PROCEDURAL BACKGROUND

The parties were married for thirty-five years. The court entered a final judgment dissolving their marriage on January 22, 2006. The final judgment approved and incorporated the parties' MSA. In the MSA, the Former Husband agreed to pay the Former Wife permanent, periodic alimony in the amount of $500 per month. The purpose of the $500 monthly alimony payment was to give the Former Wife a source of income to pay the premiums for her health insurance. The MSA provided, in pertinent part, that the alimony payments would "continue until the Wife's remarriage or <u>cohabitation with a male</u> or the death of either party, whichever event shall first occur." (Emphasis added.) The Former Husband also agreed to maintain $50,000 in term life insurance to secure the alimony award until he reached the age of sixty-five. Upon

---

[1]The Former Husband's arguments on the cross-appeal are without merit and do not warrant further discussion.

reaching that age, the Former Husband was authorized to reduce the amount of the life insurance benefit to $30,000.

In May 2012, the Former Husband filed a supplemental petition for modification of alimony. In his supplemental petition, the Former Husband referenced the cohabitation clause of the MSA and alleged that the Former Wife had been cohabiting with John Doe[2] since May 2010. Based on the alleged cohabitation by the Former Wife, the Former Husband requested relief as follows: (1) an order terminating his obligation to pay alimony; (2) an order relieving him of the obligation to maintain the life insurance policy to secure the alimony award; (3) an award against the Former Wife in an amount equivalent to the alimony payments she had received since she began cohabiting with Mr. Doe; and (4) an award of reasonable attorney's fees.

In January 2013, the Former Husband filed an amended supplemental petition. In his amended petition, the Former Husband added a request for termination of the alimony and life insurance obligations based on allegations of substantial changes in circumstances other than the Former Wife's alleged cohabitation with Mr. Doe.

The trial court held a final hearing on the Former Husband's supplemental petition to modify his alimony and life insurance obligations and the Former Wife's answer on October 7, 2013. At the final hearing, the Former Wife conceded that Mr. Doe had been living at her home since May 2010. Perhaps for this reason, the parties concentrated their presentations on two areas: (1) whether a "supportive relationship"

---

[2]This is not the real name of the man who was living at the Former Wife's home. We use a pseudonym to protect his privacy.

existed between the Former Wife and Mr. Doe; and (2) whether a substantial change in circumstances had occurred involving an increase in the Former Wife's income and a decrease in the Former Husband's ability to pay.

## II. THE EVIDENCE

The evidence presented at the final hearing concerning the issues of cohabitation and "supportive relationship" may be summarized as follows: At the time of the final hearing, the Former Husband was sixty-three years old; the Former Wife was fifty-nine. The Former Husband was retired from his previous employment at the sheriff's office. The Former Wife was employed as a bookkeeper at a real estate office.

After the parties dissolved their marriage, the Former Wife purchased a townhouse in Hillsborough County. The home had two bedrooms and two and one-half baths. Mr. Doe had been living at the Former Wife's home for approximately three years. He paid rent of $400 per month in accordance with a written agreement. The Former Wife and Mr. Doe maintained separate mailboxes to preserve their privacy about their personal and business affairs.

The Former Wife deposited the rent payments into her account and used the money to help pay her living expenses. The Former Wife and Mr. Doe did not share any expenses. He did not buy groceries or contribute to the utility bills. The Former Wife and Mr. Doe did not have any joint bank accounts or own any other property jointly. On one occasion, the Former Wife loaned Mr. Doe approximately $15,000 to assist him in buying an automobile. At the suggestion of an employee at the car dealership, she had her name placed on the title as security for the payment of the loan.

When Mr. Doe repaid the loan with interest, the Former Wife had her name removed from the car title.

The Former Wife and Mr. Doe lived lives that were largely separate. They slept in separate bedrooms and did not have an intimate relationship. They never held themselves out as husband and wife. During the week, the Former Wife enjoyed going out line dancing with her friends after work and generally did not arrive home until late. Mr. Doe never went line dancing with the Former Wife. The Former Wife tended to stay at home on the weekends; Mr. Doe went out and followed his own pursuits. Both the Former Wife and Mr. Doe dated other people. Mr. Doe did not have any assigned chores at the Former Wife's home. He did wash his own dishes, and the Former Wife expressed the hope that he would take the trash to the dumpster if he saw that the container was full.

Although the Former Wife and Mr. Doe occasionally shared a meal on the weekends, they generally ate separately. Mr. Doe's minor children visited him every other weekend; the daughter slept in the Former Wife's bedroom and the son slept on the couch in a game room. The Former Wife and Mr. Doe had gone on a cruise and taken two other vacations together, but they paid their own expenses and sought out the companionship of others while on these excursions.

Both the Former Husband and the Former Wife testified without objection at the final hearing concerning their respective understandings regarding the meaning of the clause in the MSA providing for the termination of the alimony obligation in the event the Former Wife cohabited with a male. Unsurprisingly, this testimony was largely self-serving. The Former Wife expressed her understanding that the alimony would

terminate only in the event that she lived with "a boyfriend" who helped to pay her bills. The Former Wife emphasized that Mr. Doe did not qualify as "a boyfriend" and that he might move out of her home at any time. On the other hand, the Former Husband's view was that the alimony was to terminate automatically if the Former Wife resided with any male nonrelative.

### III. THE TRIAL COURT'S RULINGS

After the final hearing, the trial court entered a written order finding with regard to the Former Husband's claim of a substantial change in circumstances as follows: (1) the Former Husband had not proven a substantial change of circumstances; and (2) "it [did] not appear [that] the Former Wife is engaged in a 'supportive relationship' as envisioned within Florida Statute Section 61.14(1)(b)." However, the trial court also found that the Former Wife had "developed a relationship with [Mr. Doe] and began allowing him to share her home as a tenant since May of 2010." (Emphasis added.) Based on this finding, the trial court concluded that the Former Wife was "co-habiting with a male" and "the Former Husband was automatically relieved of any duty to make alimony payments to the Former Wife or secure such payments through insurance since" May 2010. The trial court went on to rule that "[t]he termination of alimony was automatic when the 'cohabitation' occurred." Based on this ruling, the trial court concluded, "there was no need for the Former Husband to file and litigate a supplemental petition for modification of alimony."

Consistent with these rulings, the trial court denied the Former Husband's amended supplemental petition as moot. The trial court also ordered the Former Wife to repay to the Former Husband within ninety days all of the alimony payments that she

had received since June 1, 2010.  The Former Wife's appeal followed, and the Former Husband cross-appealed.

## IV.  FRAMING THE ISSUE

On appeal, the Former Wife makes three arguments.  First, she argues that the trial court erred in determining that she was cohabiting with a male within the meaning of the parties' MSA and Florida law.  Second, the Former Wife contends that the trial court erred in failing to resolve properly a latent ambiguity in the MSA's use of the term, "cohabitation with a male."  Third, the Former Wife asserts that the trial court erred in ruling that her entitlement to alimony terminated retroactively to May 2010, the date that Mr. Doe began residing in her home.  Based on our disposition of the Former Wife's first argument, we need not address the remaining two arguments.

In accordance with the provisions of the parties' MSA, the Former Husband's obligation to pay alimony was to terminate upon the Former Wife's "cohabitation with a male."  There is no dispute that Mr. Doe had been living in the Former Wife's residence from May 2010 through the date of the final hearing.  The question that we are called upon to decide is whether the circumstances surrounding Mr. Doe's presence in the home and the relationship between him and the Former Wife amounted to cohabitation within the meaning of the MSA.

In addressing this question, we need not consider the application of section 61.14(1)(b).  The legislature enacted section 61.14(1)(b) in 2005 to "provide an alternate method to a court to reduce or terminate alimony, without first having to find that there has been a change in financial circumstances, as is the case in current law." S. Comm. on Judiciary, CS for SB 152 (2005) Staff Analysis 12 (Feb. 25, 2005); Buxton

v. Buxton, 963 So. 2d 950, 951 (Fla. 2d DCA 2007) (quoting the Senate Staff Analysis). In accordance with section 61.14(1)(b)(1), "[t]he court may reduce or terminate an award of alimony upon specific written findings by the court that since the granting of a divorce and the award of alimony a supportive relationship has existed between the obligee and a person with whom the obligee resides." See also Buxton, 963 So. 2d at 951-52 (discussing section 61.14(1)(b) and the Senate Staff Analysis of the bill).

In this case, the trial court made a specific finding that no supportive relationship existed between the Former Wife and Mr. Doe. Competent, substantial evidence supports this finding. Thus the analysis under section 61.14(1)(b) stops at the initial step; we need not give further consideration to the effect of the statute. See King v. King, 82 So. 3d 1124, 1129 (Fla. 2d DCA 2012).

## V. THE STANDARD OF REVIEW

"A marital settlement agreement entered into and ratified by a trial court is subject to interpretation as a matter of law like any other contract." Hobus v. Crandall, 972 So. 2d 867, 869 (Fla. 2d DCA 2007). A trial court's decision concerning whether or not cohabitation has been established involves a mixed question of law and fact. Thus in reviewing such a decision, we employ a mixed standard of review. Review of the trial court's factual findings is limited to determining whether they are supported by competent, substantial evidence. Cf. Buxton, 963 So. 2d at 953. However, our review of the trial court's construction of the term "cohabitation" and its legal conclusions regarding whether cohabitation has been established is de novo. See Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc., 982 So. 2d 628, 632 (Fla. 2008); cf. Buxton, 963 So. 2d at 953. Upon a determination that cohabitation has been established, our

review of the trial court's decision to reduce or to terminate alimony is for abuse of discretion. Buxton, 963 So. 2d at 953; Zeballos v. Zeballos, 951 So. 2d 972, 974 (Fla. 4th DCA 2007).

## VI. DISCUSSION

### A. Cohabitation: A Definitional Problem

The idea of "cohabitation" has been aptly described as an "elusive concept." Husband B.W.D. v. Wife B.A.D., 436 A.2d 1263, 1265 (Del. 1981) (separate opinion of Justices McNeilly and Quillen). The term "cohabitation" may be defined relatively easily. However, the endless variety of human behavior, living arrangements, and relationships frequently renders it difficult to apply any definition of the term to a particular set of facts. See generally, Diane M. Allen, Annotation, Divorced or separated spouse's living with member of opposite sex as affecting other spouse's obligation of alimony or support under separation agreement, 47 A.L.R.4th 38 (1986) (collecting cases). The problem of defining cohabitation in connection with litigation seeking the reduction or termination of alimony generally revolves around two basic issues: "first, what constitutes living together, and second, what facts in addition to common residency are required for courts to make a finding of cohabitation." Emily M. May, Should Moving in Mean Losing Out? Making a Case to Clarify the Legal Effect of Cohabitation on Alimony, 62 Duke L.J. 403, 430 (2012); see also Twila L. Perry, The "Essentials of Marriage": Reconsidering the Duty of Support and Services, 15 Yale J.L. & Feminism 1, 26-29 (2003) (discussing the effect of cohabitation on alimony from a feminist perspective).

## B. What is Cohabitation?

We may look to dictionaries and the Florida case law to arrive at the meaning of the term "cohabitation." Black's Law Dictionary defines "cohabitation" as "[t]he fact or state of living together, esp. as partners in life, usu. with the suggestion of sexual relations." Black's Law Dictionary 296 (9th ed. 2009). According to The Oxford English Dictionary, "cohabitation" means "[l]iving together as husband and wife (often with the implication of not being married)." 3 The Oxford English Dictionary 449 (2d ed. 1989).

This court had occasion to address the meaning of cohabitation in a case involving a marital settlement agreement providing that the husband's obligation for alimony and child support would terminate at "such time as the wife shall remarry, die, or live with another person in a conjugal relationship." Herrero v. Herrero, 528 So. 2d 1286, 1287 (Fla. 2d DCA 1988) (emphasis added). In considering the meaning of the contractual phrase, "live with another person in a conjugal relationship," this court noted its agreement with the following proposition:

> [C]ontract terms of this genre should be regarded as having principally an economic purpose. They are not meant to penalize an alimony recipient on moral grounds for indulging in an intimate relationship. Such agreements are intended to relieve a payor of alimony from further obligation under circumstances where the recipient is supporting another or receiving support from another in a state of cohabitation appropriate to the marriage state.

Id. at 1288. Because similar contract terms in marital settlement agreements are intended to protect the payor spouse from a continuing obligation to pay alimony when the payee spouse is residing with another person under circumstances similar or

- 10 -

tantamount to marriage, a finding of cohabitation requires more than the mere presence of another person under the payee spouse's roof.

### C. Was Cohabitation Proven?

In this case, the Former Husband failed to establish that the Former Wife was cohabiting with Mr. Doe. Granted, at the time of the final hearing, Mr. Doe had been living in the Former Wife's residence for more than three years. Nevertheless, the trial court specifically found that Mr. Doe was sharing the Former Wife's home "as a tenant," paying her "$400 per month in rent pursuant to a rental agreement."

The trial court's finding of fact that Mr. Doe was living in the Former Wife's home as a tenant is supported by competent, substantial evidence. The $400 per month that Mr. Doe paid to the Former Wife was consistent with a sum paid by a lodger for the rental of a room in a house; the amount was not so great that it suggested a general sharing of all household expenses. During the period of Mr. Doe's residence, he and the Former Wife maintained separate bedrooms and they did not have an intimate relationship. Although the Former Wife and Mr. Doe were friends, the time that they spent together was limited. They did not generally take meals together. The Former Wife and Mr. Doe each had relationships with members of the opposite sex. They did not hold themselves out as husband and wife. Mr. Doe did not assume any designated chores at the residence such as doing the dishes, vacuuming the carpet, or mowing the lawn. The Former Wife and Mr. Doe never pooled their money or resources.

Accordingly, the pertinent facts are consistent with the trial court's characterization of Mr. Doe's status in the Former Wife's home "as a tenant." It would

probably be more precise to describe Mr. Doe as a <u>lodger</u>, "[a] person who rents and occupies a room in another's house." <u>Black's Law Dictionary</u> 1026 (9th ed. 2009). To put it in a nutshell, the Former Wife and Mr. Doe shared a roof, but they did not share their lives. The parties have not cited and our independent research has not disclosed a Florida case directly on point. However, numerous courts from other jurisdictions have held that this kind of a shared living arrangement does not constitute cohabitation. See <u>McNatt v. McNatt</u>, 908 So. 2d 944, 946-47 (Ala. Civ. App. 2005) (the former wife, who was unemployed, rented a room in the home of a man recommended by her former employer to be near the site of an anticipated job); <u>Elsevier v. Elsevier</u>, 395 So. 2d 73, 74 (Ala. Civ. App. 1980) (the former wife allowed one of her former husbands, who was elderly, in ill health, and had no other place to go, to live in her home as a "rent paying tenant"); <u>In re Marriage of Thweatt</u>, 157 Cal. Rptr. 826, 829-30 (Cal. Ct. App. 1979) (the unemployed former wife allowed two male boarders, a father and his son, to live in her home in exchange for sharing expenses); <u>In re Marriage of Molloy</u>, 635 P.2d 928, 930 (Colo. App. 1981) (after relocating from Colorado to Washington, D.C., the high cost of real estate and an inability to obtain financing led the former wife to purchase a house in joint tenancy with a male acquaintance; the former wife occupied the upper portion of the dwelling, and the man lived in the lower portion); <u>Reeder v. Reeder</u>, 495 N.E.2d 1383, 1388 (Ill. App. Ct. 1986) (the former wife rented the finished basement of a home; the male owner occupied the three upstairs bedrooms with his sixteen-year old son and his seventy-nine-year old mother); <u>In re Marriage of Golden</u>, No. 00-1624, 2001 WL 1205293 *2 (Iowa Ct. App. Oct. 12, 2001) (the former wife rented the upstairs portion of her home to a male tenant with whom she maintained a friendly but not intimate

relationship); In re Marriage of Kuzanek, 105 P.3d 1253, 1257-58 (Kan. 2005) (the former wife, who was unemployed and not receiving regular maintenance or child support payments from the former husband, rented the basement of her house, which had a private entrance, to her boyfriend); Brown v. Brown, 472 N.Y.S.2d 550, 552 (N.Y. Sup. Ct. 1984), aff'd as modified and remanded, 505 N.Y.S.2d 648 (N.Y. App. Div. 1986), app. dism., 514 N.E.2d 1374 (N.Y. 1987) (the former wife rented the lower two levels of her home to a male friend of her brother to reduce household expenses; the former wife occupied the two upper levels); Austin v. Austin, 866 N.E.2d 74, 79-80 (Ohio Ct. App. 2007) (the former wife purchased a house together with and lived in the house with her business partner to facilitate the operation of their locksmith business). Based on the dictionary definition of cohabitation, the Florida cases addressing the issue, and the cases from other jurisdictions involving tenants and lodgers, we conclude that the trial court erred in ruling that Mr. Doe's residence "as a tenant" in the Former Wife's home amounted to "cohabitation with a male" within the meaning of the parties' MSA.

## VII.  CONCLUSION

On the Wife's appeal, we reverse the trial court's order.  On remand, the trial court shall enter an amended order denying the Former Husband's supplemental petition on the merits and vacating its finding that the Former Husband's obligation to pay alimony and to maintain life insurance as security for its payment terminated automatically in May 2010.  The trial court must also vacate the portion of its order directing the Former Wife to repay the alimony payments received since June 1, 2010. On the Former Husband's cross-appeal, we affirm.

To the extent that the Former Wife has repaid alimony payments to the Former Husband, he is liable to repay the monies received with interest to the Former Wife. On remand, the trial court may establish a schedule for the Former Husband's repayment of these monies.

Affirmed in part, reversed in part, and remanded with directions.

CRENSHAW and MORRIS, JJ., Concur.