# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D18-1870

———————————————

MICHAEL E. HOLDER,
Former Husband,

    Appellant,

    v.

ANNA MARIE LOPEZ, f/k/a ANNA
MARIE HOLDER, Former Wife,

    Appellee.

———————————————

On appeal from the Circuit Court for Wakulla County.
John C. Cooper, Judge.

June 7, 2019

KELSEY, J.

Mr. Holder, Former Husband, retired from driving a tractor-trailer rig in January of 2017, at age sixty-five. He had been paying permanent periodic alimony since these parties divorced in 2003, but neither the parties' marital settlement agreement nor the final judgment dissolving their marriage addressed what would happen with alimony upon either party's retirement. After retiring, Former Husband petitioned for reduction or termination of alimony. The trial court reduced the alimony but did not terminate it, and Former Husband appeals that order. We reverse because the trial court erred in two respects: (1) imputing non-existent housing expenses to Former Wife; and (2) finding

Former Husband voluntarily under-employed and imputing income to him without the required evidentiary basis. *See* § 61.08(2), Fla. Stat. (listing factors to be considered in evaluating need and ability to pay alimony); § 61.14(1)(a), Fla. Stat. (governing changes in alimony based on changed circumstances); *see also Ketcher v. Ketcher*, 188 So. 3d 991, 993 (Fla. 1st DCA 2016) (holding that award of alimony must be supported by findings of both need and ability to pay); *McCray v. McCray*, 493 So. 2d 1117, 1118 (Fla. 1st DCA 1986) (reversing alimony award where record did not support amount claimed as wife's need).

### (1) Need: Imputing Expenses to Former Wife.

The trial court erred in finding that Former Wife demonstrated need. The evidence was undisputed that she received Social Security and Medicare disability benefits, plus a share of Former Husband's civil service and military retirement benefits, which was meeting her basic needs and leaving her a small surplus of monthly income. It was undisputed that she was not incurring housing expenses because she was living with her children on a rotating basis to spend time with grandchildren (apparently from an earlier marriage) and assist with their needs, and had a bungalow at her son's house. Even if there had been a present need for other housing, there was no evidence of what that would cost. The trial court erred in imputing housing expenses to Former Wife on this record. *See Hedden v. Hedden,* 240 So. 3d 148, 151-52 (Fla. 5th DCA 2018) (finding it an abuse of discretion to base alimony award on mere possibilities or speculation about future events); *Kobe v. Kobe*, 159 So. 3d 986, 987 (Fla. 1st DCA 2015) (concluding trial court erred in awarding alimony without sufficient record evidence and findings of actual expenses).

In addition, the record reflects that Former Wife has accumulated credit card debt that she attributed largely to purchasing craft supplies for her activities with her grandchildren, but the trial court did not consider the nature of these voluntary, non-essential expenses. Nor did the trial court consider that, if Former Wife, who claimed to be totally disabled, can assist with child-care and household needs for family

2

members, she likely could do so for paying clients. An award of alimony should not exceed the recipient's actual, reasonable need. *McCray*, 493 So. 2d at 1118. On this record, the trial court erred in finding need, and therefore erred in failing to terminate Former Husband's alimony obligation.

## (2) Ability to Pay: Imputing Post-Retirement Income to Former Husband.

Although the error in finding need is dispositive of this appeal, we address the error in the trial court's treatment of Former Husband's retirement, in the event it becomes relevant in future proceedings between these parties. Retirement is a changed circumstance warranting reconsideration of alimony. *Pimm v. Pimm,* 601 So. 2d 534, 537 (Fla. 1992) ("In determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire."). The supreme court in *Pimm* noted that sixty-five "has become the traditional and presumptive age of retirement for American workers." *Id.* The court also noted that "[e]ven at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty." *Id.*

Former Husband's decision to retire was reasonable. He was sixty-five years old, which he testified was five years older than the age at which most truckers retire. He had a variety of physical limitations and ailments related to age and the physical labor associated with thirty-six years of military service overlapping with twenty-one years working as a truck driver, for a total of nearly fifty years of work. The evidence of his physical limitations included Former Husband's testimony as well as documentation from a physician that Former Husband suffered from fibromyalgia, back pain, and fatigue, and was unable to work. These factors demonstrate reasonableness and a substantial change of circumstances warranting modification or termination of alimony. *Id.*

3

Although the trial court concluded that Former Husband was no longer physically able to continue driving a truck, the court nevertheless found that Former Husband was able to perform some kind of part-time work for minimum wage. It was error for the trial court to proceed to an imputed-income analysis, because the retirement was reasonable as supported by the undisputed evidence. A reasonable retirement under these circumstances does not constitute voluntary under-employment. *Leonard v. Leonard,* 971 So. 2d 263, 266 (Fla. 1st DCA 2008) (holding courts may not impute income unless the payor voluntarily declined to find work paying at or above previous earnings); *Schram v. Schram,* 932 So. 2d 245, 249-50 (Fla. 4th DCA 2005) (holding trial courts may not impute income without first finding that termination of employment was voluntary and that the underemployment was owing to "less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received") (quoting *Konsoulas v. Konsoulas,* 904 So. 2d 440, 443 (Fla. 4th DCA 2005)).

In addition, even if there were a valid basis to impute income to Former Husband, the trial court erred in failing to base imputation on specific evidence of available jobs appropriate to Former Husband's experience and physical limitations, how much they would pay, and other pertinent factors such as competition for such jobs in the relevant marketplace. *See Broga v. Broga,* 166 So. 3d 183, 185 (Fla. 1st DCA 2015) (requiring evidence and findings of "the employment potential and probable earnings . . . based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community if such information is available," under § 61.30(2)(b), Fla. Stat.); *Vallette v. Vallette,* 693 So. 2d 1121, 1121 (Fla. 4th DCA 1997) (requiring current evidence of skills and of available jobs in the current market at similar income); *Cooper v. Cooper,* 639 So. 2d 153, 155 (Fla. 2d DCA 1994) (holding imputed income must be "based on a finding that the husband is capable of earning a specified, imputed amount and that he could, in fact, earn this amount by using his best efforts"). Former Wife had the burden of proving these factors. *Burkley v. Burkley,* 911 So. 2d 262, 269 (Fla. 5th DCA 2005). She failed to do so. Although the trial court ultimately adjusted other obligations to create a paper

4

surplus of a few hundred dollars to be paid to Former Wife, the finding of ability to pay appears to have been based on the improperly imputed income, which did not establish ability to pay.

REVERSED.

ROWE, J., concurs; BILBREY, J., dissents with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

BILBREY, J., dissenting.

The former husband appeals the trial court's order modifying the final judgment of dissolution of marriage because it reduced, but did not eliminate, his permanent periodic alimony obligation to the former wife. Applying the appropriate law to our review of the trial court's order, I am compelled to respectfully dissent and would affirm the order.

The final judgment, entered in September 2003, incorporated the parties' marital settlement agreement, including provisions for former wife's support. The marital settlement agreement required the former husband to provide the former wife with health insurance, portions of his retirement accounts, and $1,150.00 per month in permanent periodic alimony secured by an insurance policy on his life. The alimony and insurance premiums amounted to a monthly obligation of $1,785.15 payable by the former husband. No appeal was taken from the final judgment.

Thirteen years later, in February 2017, the former husband filed his supplemental petition for modification or termination of his alimony and insurance premium obligations. *See* §

5

61.14(1)(a), Fla. Stat. (2018).[1] He alleged several substantial changes in his circumstances, including his recent voluntary retirement at age 65 from his physically demanding trucking job and his declining physical health. The former husband had remarried but the former wife had not. According to the former husband, the former wife's financial circumstances had also substantially changed since the final judgment due to her qualification for, and receipt of, Social Security Disability benefits and health care coverage through Medicare. Other than the receipt by the former wife of her portion of the former husband's retirement benefits as originally awarded, the former husband did not allege any increase in the former wife's income or earning capacity since the 2003 final judgment.

After a delay in obtaining service upon the former wife caused by her lack of a permanent residence,[2] proceedings continued upon the former husband's supplemental petition for modification. The final hearing was held in December 2017. The hearing transcript reflects the parties' wide-ranging testimony and the court's inquiries about matters not strictly essential to resolution of the supplemental petition. The written order also reflects the broad scope of the hearing and includes lengthy narrative of various facts and observations, some relevant and some inconsequential to the disposal of the supplemental petition. The superfluous discussion tends to confuse, rather than enlighten, our review of the trial court's particular findings necessary to support its ruling. However, ultimately the court found "a substantial unanticipated change in circumstances of the parties since entry of the last order" and that the former husband's "retirement from his job has resulted in a significant reduction of income." The court also found that the former wife "is totally disabled and cannot work at all" and that she had secured health insurance costing her only $31.00 per month. Upon these substantial changes in the former husband's financial

---

[1] The pertinent portions of section 61.14(1), Florida Statutes, have not been amended since 2003.

[2] The record reflects that the former wife lived primarily with one adult son and visited other adult children of the marriage.

abilities and the former wife's needs for insurance, the court granted modification of the support provisions in the final judgment.

The court's finding substantial decreases in the former husband's financial circumstances and in the former wife's need for him to provide health insurance are not challenged on appeal. And the former husband does not challenge the trial court's legal conclusion that modification was warranted based on these changes in circumstances. Accordingly, the trial court's ruling that modification is warranted is not before us for our de novo review. *See Jarrard v. Jarrard*, 157 So. 3d 332, 337 (Fla. 2d DCA 2015) (mixed standard of review for modifications of alimony under § 61.14, Fla. Stat.; de novo review for legal conclusion that modification is required by substantial change in circumstances); *Bauchman v. Bauchman*, 253 So. 3d 1143, 1146 (Fla. 4th DCA 2018). Once grounds for any modification at all are established (here, the requisite substantial change in circumstances), the trial court's decision whether to reduce or terminate alimony is reviewed for abuse of discretion. *Atkinson v. Atkinson*, 157 So. 3d 473, 478 (Fla. 2d DCA 2015); *Albu v. Albu*, 150 So. 3d 1226 (Fla. 4th DCA 2014). The extent of the modification to the former husband's support obligation is the issue before us.

Focusing on the actual modification ordered by the trial court, the order on appeal eliminates the former husband's obligations to provide the former wife with health insurance and secure alimony with a life insurance policy. It also reduces the alimony itself from $1,150.00 to $500.00. The former husband's monthly support obligations were thus reduced by $1,285.15, from $1,785.15 to $500.00. The court made the reduced support obligation retroactive to the filing date of the former husband's supplemental petition and determined that no arrearages of alimony were due.

The former husband asserts on appeal that the trial court abused its discretion by finding that the former wife continued to have a need for any alimony and that he had any ability to pay. "In determining the extent of modification, the trial court should consider those factors listed in section 61.08, Florida Statutes, to the extent that they are relevant in a modification proceeding." *Albu*, 150 So. 3d at 1228. "These factors include each party's

7

financial resources, earning capacities, employability, and sources of income." *Id*.

Both the transcript of the final hearing and the order on appeal demonstrate the trial court's proper consideration of the statutory factors to support the determination "that a party has a need for alimony or maintenance and that the other party has the ability to pay alimony or maintenance." § 61.08(2), Fla. Stat. Under section 61.08(2)(b), the court found the duration of the marriage was almost 25 years. As set out in subsections 61.08(2)(c), (2)(d), (2)(e), and (2)(i), the court considered the former wife's current need in light of her age (62), physical condition ("totally disabled"), financial resources and sources of income (Social Security Disability benefits and her portion of former husband's civil service and military retirement), and her employability ("cannot work at all").

The former husband does not assert on appeal that the court failed to apply the proper statutory factors. Likewise, he does not challenge the court's conclusions under these factors. Rather, the former husband argues that the trial court abused its discretion by finding any need because the former wife was able to meet her basic needs with her income. However, the former husband does not challenge the trial court's finding that the former wife "is able to live on her meager income without a monthly deficit because she is living with her son who is paying her housing expense." Without calculating a specific housing expense, the court found generally that "she is in need of some financial assistance in the form of alimony" and she "has a continued need."

The majority interprets the trial court's finding a continued need of the former wife for "some financial assistance" as an improper imputation of a speculative housing expense to the former wife. The cases relied upon by the majority all concern direct appeals of final judgments awarding alimony, not modification proceedings. *See Hedden v. Hedden*, 240 So. 3d 148 (Fla. 5th DCA 2018); *Ketcher v. Ketcher*, 188 So. 3d 991 (Fla. 1st DCA 2016); *Kobe v. Kobe*, 159 So. 3d 986 (Fla. 1st DCA 2015); *McCray v. McCray*, 493 So. 2d 1117 (Fla. 1st DCA 1986). Accordingly, the determination of a substantial change in the recipient's need since the entry of a final judgment awarding alimony is not addressed in those cases.

The parties' and the court's detailed discussion during the final hearing about the accuracy of particular expenses of both parties did not result in the court setting a particular dollar amount of the former wife's need based on a specific amount of imputed expense, as might be appropriate for an initial award of alimony in a final judgment. The former husband does not argue on appeal that the court's finding a continued need of the former wife was based upon mathematical error in calculation of a dollar amount.

The former husband fails to establish that the trial court abused its discretion by finding that, despite the substantial change in the parties' financial conditions, the former wife continued to need "some financial assistance." Other than her decreased need for insurance provided by the former husband, there was absolutely no evidence that the former wife's financial circumstances had improved since the entry of the agreed-upon alimony provisions in the final judgment.

The majority also finds the trial court abused its discretion by imputing income to the former husband to support its finding of his ability to pay the reduced alimony. While the court's expansive discussion of the former husband's physical condition and employability in contrast to those of the former wife suggests the statutory factors for imputing income for child support purposes, the trial court was not considering, and did not make any ruling upon, an imputation of income pursuant to section 61.30(2)(b). The court's unfortunate use of terminology — that it was "appropriate to impute income to" the former husband, in the amount of "minimum wage rate of $8.25 at a number of hours equal to 50% of full-time" due to his voluntary retirement — could be misleading as to the actual modification ordered by the trial court. Like the former wife's need, the "imputing" here was the imputation of ability to pay and did not result in any dollar amount used in any mathematical formula by the trial court in the calculation of alimony.

The clear language in the order on appeal shows that the trial court did not base the reduced alimony of $500.00 per month on any imputed income. Unlike *Leonard v. Leonar*d, 971 So. 2d 263 (Fla. 1st DCA 2008), the modification of alimony in this case was not the result of imputed income supporting a calculation of

9

a specified wage-earning capacity for purposes of setting the alimony payment. In this case, the former husband's ability to pay the modified alimony amount was based on the court's cessation of his obligation to pay future insurance premiums to secure his alimony payments ($187.20) and for health insurance for the former wife ($447.95). The court's termination of these insurance obligations afforded the former husband more than enough ability to pay his reduced alimony payments.

In view of the court's actual modification of alimony, the court's discourse on the former husband's capacity for employment, minimum wage and possible part-time jobs for the former husband was mere surplusage. Although the order on appeal is not a model of clarity and contains an abundance of dicta and other superfluous language, the former husband fails to establish that the trial court abused its discretion by reducing, but not eliminating, the alimony payment based on the continuance of former wife's need and his ability to pay the reduced amount. Accordingly, I would affirm.

_____

Gena D. Fournier and Richelle M. Marsico, of Fournier Law, PLLC, Tallahassee, for Appellant.

No appearance for Appellee.

10